# Consolidated Cigar Corporation *v.* Corbin et al., Appellants.

*Appeals—Trial—Theory on which case was tried below.*

1. A theory as to the facts involved on which a case was tried in the court below cannot be departed from on appeal.

2. Appellate tribunals will follow any correct view of law which, on the proved facts, sustains the judgment under attack, but, ordinarily, they will reverse only on a theory previously presented to the trial court.

*Appeals—Constitutional question—Interstate commerce—Question not raised in court below.*

3. Where facts are present in the record on which a constitutional question concerning interstate commerce is, sought to be based, but the question was neither raised in nor passed on by the court below, it will not be considered on appeal for purpose of reversing a judgment.

4. Where a constitutional question based on interstate commerce is not brought before the trial court at the trial, it cannot be brought before the court on a motion for judgment n. o. v. where plaintiff's case lacks proof on an essential point in the controversy.

5. In such case, the appellate court will not determine whether the Act of June 8, 1911, P. L. 710, relating to the registration of foreign corporations, is unconstitutional, in so far as it applies to an unregistered foreign corporation engaged in interstate commerce, when proof of the existence of the particular corporation concerned at the time of the transaction in question is lacking.

6. When, not at trial but in its opinion entering judgment on the verdict, the trial court assumes the existence of a fact, not essential to the validity of the judgment, but which, if true, would form a basis for a contention as to its constitutional invalidity, then, on a motion to set aside the judgment, based on a mistake of law, and for a new trial, the party raising the constitutional question may urge the court to afford him an opportunity to produce evidence as to the existence of the assumed fact, and, after he furnishes the required evidence, and the court has passed on it at another trial, he will be in a position to have the constitutional question reviewed on appeal, but not before.

7. Where a mistake of law is alleged to have been committed in the decision of a case, and the decision is, nevertheless, sustainable on other grounds, the appellate court will not consider, as ground

of its decision, a theory of law, to show a mistake of the court below, which was not presented to that tribunal.

*Carriers—Common carriers—Individuals—Unregistered corporation—Loss of goods.*

8. Where two individuals are sued as partners for loss of goods, which they had received for transportation from Pennsylvania to New York, they cannot secure the reversal of a judgment against them on the grounds that the goods were delivered to an unregistered foreign corporation of the same name as the partnership, where there was no proof in the record of the existence of such corporation at the time the goods were delivered to defendants, and the record contains admissions that defendants acted as individuals, not as officers of the alleged corporations, in the receipt of the goods.

9. In Pennsylvania an individual as well as a corporation, may be held to the liability of a common carrier.

Argued December 2, 1925.   Appeal, No. 390, Jan. T., 1925, by defendants, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1923, No. 683, on verdict for plaintiff, in case of Consolidated Cigar Corporation v. Louis Corbin and Charles Bodine, trading as Corbin & Bodine. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Assumpsit for loss of goods delivered for transportation.   Before McCULLEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,985.82.   Defendant appealed.

*Error assigned* was, inter alia, refusal of defendant's motion for judgment n. o. v., quoting record.

*Arthur Hagen Miller,* for appellant.—The Act of June 8, 1911, P. L. 710, relating to registration of foreign corporations, is unconstitutional and invalid so far as it applies to corporations engaged in interstate commerce: Shafer v. Grain Co., 268 U. S. 189; Sioux Remedy Co. v. Cope, 235 U. S. 197; Western Union Tel.

CONSOLIDATED CIGAR CORP. *v.* CORBIN, Aplnts. 275

Co. v. Kansas, 216 U. S. 1; International Text Book Co. v. Pigg, 217 U. S. 91; West v. Gas Co., 221 U. S. 229; Barrett v. New York, 232 U. S. 14; Sault Ste. Marie v. Transit Co., 234 U. S. 333.

Corbin & Bodine, Inc., was not doing business unlawfully in Pennsylvania: Phila. & Gulf Steamship Co. v. Clark, 59 Pa. Superior Ct. 415; Phila. v. Steamship Co., 61 Pa. Superior Ct. 401.

The officers of an unregistered foreign corporation are not liable as individuals, or as agents, or as partners to a plaintiff whose only dealings with the corporation were not through the officers whom it is sought to hold: Bond v. Stoughton, 26 Pa. Superior Ct. 483; Stephenson v. Dodson, 36 Pa. Superior Ct. 343; Stoner v. Phillipi, 41 Pa. Superior Ct. 118.

*John Weaver,* for appellee.—This case is now presented upon an entirely different theory from the presentation of the case in the court below: Sullivan v. R. R., 272 Pa. 429; Saxman v. McCormick, 278 Pa. 268; Isett v. Maclay, 265 Pa. 165; Achenbach v. Stoddard, 253 Pa. 338.

There is no constitutional question properly before this court: Clarion Borough Petition, 275 Pa. 175; Chartiers Creek Bridge, 235 Pa. 365.

The State of Pennsylvania has the right to prescribe the terms upon which a foreign corporation shall carry on business in this State: Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Fritts v. Palmer, 132 U. S. 282.

Where a person assumes to act for another knowing that he is not authorized to do so, he is personally liable to the party with whom he deals: Lasher v. Stimson, 145 Pa. 30.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 11, 1926:

The Consolidated Cigar Corporation sued Louis Corbin and Charles Bodine, trading as "Corbin & Bodine,"

in assumpsit, to recover $5,192. A verdict was directed in plaintiff's favor, for $4,985.82, on which judgment was entered; defendants have appealed.

The original statement of claim avers that, on July 20, 1923, plaintiff delivered to defendants certain merchandise, valued at the sum first above mentioned, to be carried to Jersey City, New Jersey, and that defendants failed to deliver the goods. Hence the suit.

An affidavit of defense was filed raising points of law exclusively; and the statement of claim was amended so as to give the consideration for the contract and other particulars called for by defendants. This amended statement averred that, at the time in question, defendants "were engaged in the trucking business for hire in and about the City of Philadelphia." Then an affidavit on the merits was filed wherein defendants denied that "on the date set forth in plaintiff's statement of claim they were engaged in the trucking business for hire in and about the City of Philadelphia"; and averred that, "on the contrary,......Corbin & Bodine, a corporation existing under the laws of the State of Delaware, [was the party so] engaged......on the date mentioned." In this affidavit, defendants also denied that the goods in question were delivered to them, and insisted they were in fact delivered to the aforesaid corporation, from whom they were stolen without any fault on its part; and defendants averred that, at the time of the delivery of the goods, "plaintiff placed a value thereon of $1,592," as stated in the shipping order; further, that, prior to the present action, plaintiff had sued the aforesaid corporation in the City of New York upon the same cause of action, and that this suit was still pending and undisposed of; finally, that some of the merchandise had been found and returned to plaintiff, which fact the latter admitted at trial. The difference between the amount claimed and the verdict rendered is probably accounted for by the value of the goods returned, but no point is raised concerning this variation.

The case went to trial on the above pleadings; the only questions that seem to have been at issue, or to have been considered by the parties as at issue, were (1) the value of the merchandise and the effect of the apparent undervaluation in the shipping order; (2) whether the transaction in question was between plaintiff and the individual defendants or between the former and a Delaware corporation named "Corbin & Bodine, Inc."

So far as the first issue is concerned, plaintiff frankly admitted at trial that the shipping order stated the value as $1,592, but insisted the true value was the amount sued for, $5,192, testifying that the difference in the amounts was explained by the fact that there had been a transposition of the figures 5 and 1, and that this was a mere clerical error. When the trial judge asked counsel for defendant, "Is there any dispute about the real value of the goods?" the latter replied, "I don't think so, if he says it is a mistake." The court then inquired, "Is there any question that the freight rate is just the same whether [the goods] are valued at $1,592 or $5,192" to which counsel for defendant answered "No." Whereupon the court remarked, "So that it made no change in the charge that would have been made against the shipper?" and counsel for defendant replied, "No." Under these circumstances, we must take it that the court below was warranted in treating the case as though the point of a difference in value between the amount stated in the shipping order and in plaintiff's statement of claim was waived by defendant. This having been the theory in which the case was tried, it cannot be departed from on appeal: Achenbach v. Stoddard, 253 Pa. 338, 343; Weiskircher v. Connelly, 256 Pa. 387, 389; Isett v. Maclay, 265 Pa. 165, 170; Kauffman v. Kauffman, 266 Pa. 270, 276; Sullivan v. B. & O. R. R. Co., 272 Pa. 429, 436; Saxman v. McCormick, 278 Pa. 268, 273. We may add, moreover, there is testimony that defendants' rates were fixed by the quantity or bulk of the goods shipped rather than by their value.

On the second issue, as to whether the transaction in question was between plaintiff and the individual defendants or between it and a Delaware corporation named Corbin & Bodine, Inc., the only evidence tendered by defendants was as follows: First, they offered the shipping order and waybill, and, next, the record of the before-mentioned suit in New York, both, apparently, to show that plaintiff dealt with Corbin & Bodine as a corporation rather than with the defendants as individuals. But the trouble with defendants' case is that they did not adhere consistently to the defense averred in their affidavit; in place of maintaining steadfastly that the goods were never delivered to them as individuals, they made admissions which can be taken against them as importing the contrary, and this will be shown later.

During the course of the trial, the court remarked, referring to the New York suit, "The point Mr. Cohen [counsel for the defense] makes is this, that you [meaning plaintiff] sued an incorporated body in New York City, claiming the incorporated body was the person responsible, and you are here suing individual parties personally." Counsel for plaintiff then explained that, in bringing the New York suit, his clients had named a wrong defendant, and, as soon as he ascertained that fact, he had had the case discontinued. Thereupon the trial judge, turning to counsel for defendants, said: "Now you set up the defense in this case that the other suit [meaning the New York suit] was right and this one is wrong," and counsel replied, "That is right. . . . . . *that is my defense.*" This position, of course, was consistent with the pleadings; but, later on, counsel for defendants said of record, "I admit that Louis Corbin and Charles A. Bodine [defendants in the present suit] were officers and directors of the defendant corporation, Corbin & Bodine, and that, at the time the cigars were shipped from the Consolidated Cigar Corporation through Corbin & Bodine, Inc., . . . . . . Corbin & Bodine

*as individuals* were acting on behalf of the corporation, ......and Corbin & Bodine, Inc., received the shipment in Philadelphia *through these two individuals.*"

While defendants wavered in maintaining their de fense, neither of the parties made any deliberate effort at trial to depart from the main issue raised by the pleadings, as to whether it was the individual defend ants or the alleged Delaware corporation with whom plaintiff dealt; and, although they now raise it, no point was there made by defendants,—either in the pleadings, in the recorded discussion between the court and counsel, or by a request for charge,—that the transaction in suit was of an interstate character, or that this aspect of the matter should influence the decision of the case.

True, plaintiff introduced evidence to prove that no such foreign corporation as "Corbin & Bodine, Inc.," was registered in Pennsylvania at the time of the ship ping contract, but this evidence bore on the main issue and went to show the probability that the alleged cor poration did not exist at that time.

As previously said, the issue as to whom plaintiff dealt with, whether defendants individually or the alleged corporation, was to the fore during the trial, and the court below did not indicate a departure therefrom when instructing the jury to find for plaintiff, nor, in fact, did it at that time indicate any particular grounds of decision. But, in its opinion entering judgment on the verdict, the court, apparently assuming, for the mo ment, the existence of such a corporation when the con tract was made, stated: "The defendants admittedly were in the active management of the business in Phila delphia, and whether they were conducting the business for themselves individually or on behalf of an unregis tered foreign corporation, unauthorized to do business here, the result as to their liability is the same," citing Lasher v. Stimson, 145 Pa. 30, 36, and Raff v. Isman, 235 Pa. 347, 351-2, where we said: "When a person as-

sumes to act for another, knowing that he is not author-
ized to do so [because that other is a nonregistered
foreign corporation] he becomes personally liable to the
party with whom he deals for or on account of his al-
leged principal."

Perhaps the above excerpt from the opinion of the
court below overlooks the fact, now called to our atten-
tion by defendants, that the transaction involved in this
case was interstate in character, and also the rule, de-
pended upon by them in this appeal, that, while a foreign
corporation may engage generally in business within a
state in such manner that registration under a local
statute would be necessary, yet, on the other hand, it
may carry out a single transaction which would be
strictly interstate in character, and, as to that trans-
action, the corporation would be protected by the federal
Constitution from the ordinary consequences of its neg-
lect to register as required by the local statute.*  But,
as previously noted, the case at bar was not tried on the
theory that the character of the transaction, as an inter-
state shipment, was of force; nor, during the course of
the trial, was consideration given to the thought that the
nonregistration of the alleged corporation in any sense
controlled the situation.  The last-mentioned idea seems
to have been propounded for the first time by the court
below in entering judgment on the verdict.  If defend-
ants wished to insist on the point which they now raise,
—that the trial court gave to the fact that the alleged

---

* For discussion of this rule see opinions by Moschzisker, J., in
De la Vergne R. M. Co. v. Kolischer, 14 Pa. Dist. 521, and Ind.
Brick Co. v. Biddle, 17 Pa. Dist. 1083, 1085; see also Steel Tube
Co. v. Riehl, 9 Pa. Superior Ct. 220, 225; Osborne v. Florida, 164
U. S. 650; Browning v. Waycross, 233 U. S. 16, 22; Star-Chronicle
v. United Press Assns., 204 Fed. 217, 222 (appeal refused in 232
U. S. 714); and Elwell v. Adder M. Co., 136 Wis. 82, 116 N. W.
882, 884. See, also, Pa. Act of 1911, P. L. 710, section 4, providing
that *contracts* of unregistered foreign corporations shall not be
invalid, but prohibiting suit thereon by any such corporation until
certain requirements have been complied with.

corporation was not registered at the time the contract was made, an importance which, for constitutional reasons, could not be lawfully allowed it,—this contention should have been made to the court below, on a motion to reconsider and set aside the judgment, as having been entered on a mistake of law, and for a new trial, or in some other way, and not to this court as an original contention: Chartiers Creek Bridge, 235 Pa. 365; Clarion Borough Petition, 275 Pa. 175; Hulbert v. Chicago, 202 U. S. 275, 279, 280; Willoughby v. Chicago, 235 U. S. 45, 49; see also, Oxley Stave Co. v. Butler County, 166 U. S. 648, 653; Keokuk, etc., Bridge Co. v. Illinois, 175 U. S. 626, 633, 634; Cleveland, etc., R. R. Co. v. Cleveland, 235 U. S. 50, 53. Where facts are present in the record on which a constitutional question concerning interstate commerce is sought to be based, but the question was neither raised in nor passed on by the court below, it will not be considered on appeal by this court.

In connection with the above rule, see Central Union Telephone Co. v. City of Edwardsville, 46 Sup. Ct. 90, 91, where the Federal Supreme Court very recently said: "Without any doubt it rests with each state to prescribe the jurisdiction of its appellate courts,......and the rules of practice to be applied in its exercise; and the state law and practice in this regard are no less applicable when federal rights are in controversy than when the case turns entirely upon questions of local or general law." The syllabus to Willoughby v. Chicago, 235 U. S. 45, states a relevant rule of the Federal Supreme Court thus: "Where [a] constitutional question is obvious from the beginning and, [according to local practice,] is not open in the Supreme Court of the State unless taken on the trial, it cannot be considered here unless it was so taken," citing Hulbert v. Chicago, 202 U. S. 275, 280.

The constitutional question, based on the interstate feature of this case, which is now called to our attention, was not brought before the court below at trial, and it

could not have been brought before that tribunal on the *only* motion for review there filed, namely, for judgment n. o. v., because, on such a motion, the record must be accepted as it was made at trial, and the court below having correctly taken the position that the case lacked proof of the existence of Corbin & Bodine as a corporation at the time of the shipment, defendants would not be entitled, in the absence of this proof, to judgment in their favor on the issues concerning the existence of and the contracting with this alleged corporation, raised by the pleadings; but, on a motion to set aside the judgment, because entered on an incorrect view of the law, and for a new trial, defendants could have urged the court below to afford them an opportunity to put in such proof, and, after they had furnished the required evidence at another trial, to answer the position of that tribunal by pointing, as they do now, to the facts that, though the alleged corporation was not registered at the beforementioned time, the transaction in controversy was interstate in character, and to contend on the law, as they do now, that, as to this particular transaction, because of its interstate character, no registration was required. In other words, defendants should have placed themselves in a position to contend that the court, for purposes of adjudicating the case, having assumed the existence of a nonregistered corporation, ought to allow them an opportunity to prove that fact and to answer as to the law, that the transaction in question being interstate in character, nonregistration did not have the legal effect which the opinion of the court gave to it. In whatever way the opportunity to do so might have been brought about, this answer, which involves a constitutional question and a theory different from that relied on at trial, should have been made to the trial tribunal in the first instance, instead of to this court.

Appellate tribunals will follow any correct view of law which, on the proved facts, sustains a judgment under attack, whether or not the view urged on appeal

was brought to the attention of the court below, but ordinarily, they will reverse only a theory previously presented to the trial court: see State Hospital v. Consolidated Water Co., 267 Pa. 29, 39, and authorities there cited. This does not mean that, where the final decision of a case is based entirely on a wrong theory of law, and the decision itself may be wrong, we will sustain it nevertheless simply because the correct theory was not brought to the attention of the court below; on the contrary, under such circumstances, we usually remit the record so that the point at issue may be passed on by the trial court. What we here mean is that, where it is alleged a mistake of law has been committed in the decision of a case, and the decision is, nevertheless, sustainable on other grounds, we will not consider, as a ground of our decision, a theory of law, to show the mistake of the court below, which was not presented to that tribunal; here, for example, the theory that, since this case involves an interstate shipment, protected by the federal Constitution, the local registration act has no application.

In this instance, while the above rule applies, it is not necessary to rely on it in order to sustain the present judgment, because "No right under the federal Constitution [is] necessarily involved" therein: Hiawassee Co. v. Carolina Co., 252 U. S. 341, 343, 40 Sup. Ct. 331. The substance of defendants' contention is that, on the record as made at trial, the contract in question must be viewed one between plaintiff and the alleged Delaware corporation, and, since the contract was for the sending of goods from one state to another, it must be accounted as involving an interstate transaction; hence, even though the corporation carrying out this transaction had not registered in Pennsylvania, as required by the Act of June 8, 1911, P. L. 710, owing to the constitutional privilege of interstate commerce, it was doing business lawfully in this State, so far as the shipment in controversy is concerned, and therefore defendants assumed no indi-

vidual liability in acting for that corporation. But this contention is answered by the trial court's second ground of decision, concerning which the opinion in support of judgment for plaintiff states, and states correctly: "In the present case there is no actual proof that, when these defendants received plaintiff's goods for carriage on July 20, 1923, there was in existence any corporation, 'Corbin & Bodine,' either foreign or domestic. Not until December 20, 1923 (after the loss of plaintiff's goods), was there filed the application for registration in Pennsylvania of such a corporation [, and this] application recites that the title of the corporation is 'Corbin & Bodine,'......'established, organized or chartered under the laws of the State of Delaware,' [but] there is no averment of the date of incorporation, nor is the Delaware charter presented or proven."

True, written evidence, called to our attention by defendants, shows that, in the original New York action, a corporation designated as Corbin & Bodine, Inc., was sued by plaintiff; but that suit was instituted and discontinued prior to the instant action and the only explanation we have concerning it is to the effect that a mistake was there made in designating the defendant, which explanation was not denied by the present defendants. Again, the name Corbin & Bodine, Inc., appears in both the shipping order and the waybill, but this is not conclusive proof that the individual defendants here named were not transacting business under that title. Finally, the fact, which appears in the evidence and is called to our attention by appellants, that the original conversation leading to the shipping order from plaintiff to Corbin & Bodine, was held over the telephone with the New York office of the latter, settles none of the issues at bar.

To offset the above items of evidence depended on by defendants, we have the fact, before noted, that no evidence was offered by them to show the actual existence at the time of the transaction here in question of any such

corporation as Corbin & Bodine, Inc., and, further, we have the admissions of record of defendants that, whatever the real character of Corbin & Bodine was at the time of the shipment, the two persons named as defendants in this suit "as individuals were acting" for that concern and that the shipment was received at Philadelphia through these two individuals.

While the context of the above admissions contains references to the alleged corporation, yet it is evident therefrom that, for some reason defendants' counsel then had in mind, he desired to disassociate in some degree the alleged corporation from the business transaction involved in this case; otherwise, why should he have accentuated the fact that, though the two defendants were officers of the alleged corporation, they acted "for it as individuals" (not as officers), and that the shipments "in Philadelphia" were received "through those two individuals"? Possibly the explanation is this: Defendants thought that their corporation, being unregistered in Pennsylvania, could not lawfully perform the service in suit, but that they, in their individual capacities, might act for it. Be this as it may, we have the admissions of record that defendants acted "as individuals," and that the shipments here involved "were received through these two individuals."

On the record, made up as it is of written evidence and formal admissions, we cannot hold that the court below erred by giving binding instructions for plaintiff or by entering judgment in its favor on the verdict thus rendered, particularly in the absence of proof that the alleged corporation existed at the date of the transaction here involved.

There is one other position of defendants which must be considered. Appellants contend that, even if they "did have a common-law liability, certainly it was not that of a common carrier," and, since the liability was not that of a common carrier, they cannot in effect be treated as insurers of the safe delivery of the goods

which they were transporting for hire. Such, however, is not the law of Pennsylvania, where an individual, as well as a corporation, may be held to the liability of a common carrier (Gordon v. Hutchinson, 1 W. & S. 285, 286; Smith v. Seward, 3 Pa. 342, 345; Fuller v. Bradley, 25 Pa. 120; Lloyd v. Haugh, 223 Pa. 148, 154; Com. v. Shepherd, 62 Pa. Superior Ct. 102, 104) ; and Corbin and Bodine (who admitted at the trial that "the cigars were stolen and never delivered"), whether viewed as having corporate capacity or otherwise, undoubtedly conducted the business of a common carrier. This is plainly shown by all the evidence in the case.

The judgment is affirmed.